260 So.2d 779 (1972)
NEW ORLEANS FIRE FIGHTERS ASSOCIATION LOCAL 632 et al.
v.
The CITY OF NEW ORLEANS et al. (three cases).
Nos. 4783-4785.
Court of Appeal of Louisiana, Fourth Circuit.
April 4, 1972.
Rehearings Denied May 2, 1972.
Writ Granted June 15, 1972.
*781 Dodd, Hirsch, Barker, Meunier, Boudreaux, & Lamy, C. Paul Barker and Maurice S. Cazaubon, Jr., New Orleans, for plaintiffs-appellees.
Blake G. Arata, City Atty., Frank J. Varela, Asst. City Atty., for defendants-appellants.
Many, Hartman, LoCoco & Dwyer, Ralph D. Dwyer, Jr., New Orleans, for Louisiana Civil Service League amicus curiae.
Before LEMMON, STOULIG and BOUTALL, JJ.
BOUTALL, Judge.
These three appeals arise from three consolidated class actions filed by the New Orleans Fire Fighters Local 632, and some individual members thereof, seeking to have writs of mandamus issued directing the City of New Orleans to comply with the provisions of LSA-R.S. 33:1992 and LSA-R.S. 33:1996, as amended. Judgment was rendered in favor of plaintiffs against the City of New Orleans ordering the implementation of the statutes. An appeal was had to this Court and the judgment was affirmed. La.App., 230 So.2d 326 (1970). The Supreme Court of Louisiana denied writs. 255 La. 557, 232 So.2d 78 (1970).
Thereafter, plaintiffs filed a rule for contempt alleging that the City had not complied with the judgment of mandamus. The Court found the City in contempt for "non-wilful" disobedience of its mandate in two cases, and found compliance in the third case. Both parties have appealed the adverse judgments, thus presenting the issues before us now.
The defendant "City" is the appellant in docket No. 4784, involving longevity pay, and docket No. 4785, involving minimum salary. The plaintiff "Firemen" is the appellant in docket No. 4783, involving vacation periods. Inasmuch as the issues posed by the City relate to a general disposition of all cases, we will consider them first for the purposes of this decision. The City urges to us the following:

ASSIGNMENT OF ERRORS
1. LSA-R.S. 33:1992 is now unconstitutional under Louisiana Civil Service League, et al. v. Harold E. Forbes, Director, Department of Civil Service, et al., 258 La. 390, 246 So.2d 800, as violative of the provisions of 1921 Louisiana Constitution Art. XIV, Sec. 15(1), for the reason that by means of that statute, as amended, the Legislature attempted to fix and control the minimum salaries and other compensation of the firemen of the City of New Orleans, which power is vested only in the City Civil Service Commission after approval by the City Council of the City of New Orleans. The City cannot be held in contempt of a court order based on a statute which is unconstitutional.
2. The District Court erred in dismissing the City's peremptory exceptions in both cases appealed herein.
3. The District Court erred in finding the City guilty of contempt in both cases appealed herein for the reason that upon finding that the City's disobedience of the mandamus orders was not "wilful" as required by LSA-C.C.P. Article 224(2), the District Court did not have the legal authority to find the City guilty of contempt.
4. The longevity pay claim is barred by the one year liberative prescription of Civil Code Article 3534 and/or the doctrine of laches. The District Court erred in failing to apply the doctrine of laches.
*782 5. The District Court erred in holding that the longevity mandamus order is not ambiguous, and that the City has failed to comply with said order.
6. The District Court erred in dismissing the City's Motion to Correct Errors of Calculation in the minimum salary mandamus order which is based on LSA-R.S. 33:1992, a general statute.
7. The District Court erred in relying on a stipulation that was based on errors of calculation, that was not merged into the mandamus order, and that is an absolute nullity in ruling on contempt in the minimum salary case.
8. The District Court erred in holding that the minimum salary mandamus order is not ambiguous, and that the City has failed to comply with said order.

CONSTITUTIONALITY
While this matter was pending in appeal, the Louisiana Supreme Court handed down its decision in the case of Louisiana Civil Service League, et al. v. Harold E. Forbes, et al., 258 La. 390, 246 So.2d 800 (1971). The appellant City argues to us that the decision there is controlling of the instant case and the rationale therein announced requires that we declare Acts 55 and 57 of the Extra Session of 1968, amending LSA-R.S. 33:1992 and LSA-R.S. 33:1996, respectively, to be unconstitutional.
The issue involved in the Forbes Case, supra, was the constitutionality of Act 33 of 1970, which, among other things, provided for a minimum pay scale for members of the State Police. The Court held the statute unconstitutional as violative of Art. XIV, Sec. 15 of the Louisiana Constitution of 1921, providing for a State Civil Service Commission and granting it sole and exclusive authority to establish salaries and remunerations of all state employees coming within the provisions of the Civil Service System. It is argued to us that, since the City Civil Service Commission is also created by these same sections of the Constitution with similar power and authority, the legislative attempt to usurp the power of the City Commission is equally unconstitutional.
Basically this argument is founded on the premise that the Commission is authorized and empowered by Sec. 15(1) to adopt, amend, repeal and enforce rules which shall have the effect of law concerning classified employees in general, and that the provisions of Sec. 15(1) (c) requires only that a pay plan and amendments thereto shall become effective after approval by the governing body of the City. Thus, it is contended that the Constitution has granted the Commission sole authority to adopt laws concerning a pay plan (and so prohibiting the Legislature from adopting such laws) subject only to the law being made effective by the governing body. This argument possesses merit when we consider that only the rules adopted relating to pay plan, Sec. 15(1) (c), and to hours of work, Sec. 15(1) (6) seem to require approval of the governing body to make them effective. We note no such restriction for annual or sick leave, Sec. 15(1) (3).
However, we have had these issues presented to us previously in these same consolidated cases, and we have found the statutes to be constitutional. New Orleans Firefighters Association Local 632 v. City of New Orleans, La.App., 230 So.2d 326 (1970). The Supreme Court denied a writ relative to our decision, 255 La. 557, 232 So.2d 78 (1970), with the following comment:
"Writ denied. No error of law in the judgment complained of."
In that case there were posed to us for answer two questions relating to the constitutionality of the subject statutes, that is, Acts 55 and 57 of the Extra Session of 1968: (1) Were they violative of the constitutional provisions of the Home Rule Charter Amendment of New Orleans, Art. 14, Sec 22? (2) Were they violative of the constitutional provisions of the City Civil Service Amendment, Art. 14, Sec. 5?
*783 We held that the statutes were general laws and thus did not violate the Home Rule provisions of the Constitution, relying mainly upon the rationale of City of Nachitoches v. State, 221 So.2d 534 (La.App. 3rd Cir., 1969), writ refused 254 La. 464, 223 So.2d 870.
Similarly, we held that acts nos. 55 and 57 were not in conflict with Art. 14, Sec. 15 but were in fact supplementary thereto and conformed to the provisions of Art. 14, Sec. 15(P) (6):
"Existing laws. All existing laws relating to the State or City Civil Service System are continued in force insofar as not in conflict herewith, subject to the power of the Legislature to amend or repeal such laws or adopt new laws provided said amendments or new laws are supplementary and not in conflict herewith."
Additionally, we found that City Council, rather than the City Civil Service Commission, has the final authority to adopt any plans and to regulate employment conditions, including longevity benefits and vacation rights, and the commission's authority is limited to recommending, relying upon the rationale of New Orleans Fire Fighters Association v. City of New Orleans, 204 So.2d 690 (La.App. 4th Cir., 1967).
It is contended to us now that this latter finding of authority is erroneous in the light of Louisiana Civil Service League v. Forbes, supra. However, in the Forbes case itself, the court took pains to distinguish between the authority possessed by the Governor as compared to the authority possessed by the City Council relative to the questions before us and did not overrule the New Orleans case.
Indeed, we conclude that we cannot overrule our previous decision, even if we were so disposed, because it has now become the law of this case. The issue now presented was presented to us before and we decided it adversely to the City of New Orleans. Rehearing was applied for and denied. The Supreme Court denied application for a writ of certiorari (supra) on March 12, 1970. Our decision thus became final when the decision of the Supreme Court upon the application became final. Louisiana Constitution Art. 7, Sec. 11. This is further detailed in LSA-C.C.P. art. 2167, the pertinent part thereof reading as follows:
"When an application for a rehearing has been applied for timely: * * * (2) A judgment of a court of appeal becomes final and executory when the supreme court denies a timely application for a writ of certiorari in the case; * * *."
Since our prior decision has become final it is now the law of this case and we are not inclined to review it. Donald v. Glazer, 253 La. 811, 220 So.2d 84 (1969); Martinez v. Orleans Parish School Board, 173 La. 114, 136 So. 287 (1931); Thibodeaux v. Parks Equipment Co., 185 So.2d 232 (La.App. 1st Cir., 1965), writ refused, 249 La. 193 and 194, 186 So.2d 157 (two applications) and 249 La. 200, 186 So.2d 159 (third application).

DISMISSAL OF PEREMPTORY EXCEPTIONS
The City of New Orleans filed peremptory exceptions of no right and no cause of action based upon the failure to allege the facts which constituted the City's alleged contempt, in violation of the provisions of LSA-C.C.P. art. 225. Exceptor urges to us that the motion for contempt must reasonably appraise the defendant of each and every facet of the matter for which punishment could be imposed, relying upon Wall v. Wall, 225 So.2d 47 (La.App. 1st Cir, 1969) and Louisiana State Board of Medical Examiners v. England, 252 La. 1000, 215 So.2d 640 (1968).
The trial judge, in overruling the exceptions, was of the opinion that the motion did set out sufficient facts to appraise the *784 party charged of that which he stood charged. We are of the same opinion and hold that there was sufficient compliance with the provisions of LSA-C.C.P. art. 225. We note that the motion alleges the previous judgments of the court in these consolidated cases, each of which sets out the specific action to be taken by the City in the particular case. This is supplemented by allegations referable to the request for the various writs of mandamus, setting out each specific item which formed the bases of the judgment later rendered. The remaining allegations show the action taken or lack of action by the City in response to the judgment which would tend to show compliance or non-compliance with the judgments.
While we believe the motion to be sufficient by itself, we feel compelled to point out that, through conferences, the City and the Firemen exchanged detailed, specific plans for implementation of and for conformity with the judgments and filed these plans in the record. This apparently came about as a result of the different interpretations of the application of the statute to specific items of pay, etc. The plans tend to show, with specificity, why the City thought it was in compliance and why the Firemen thought it was not in compliance. We mention this exchange of plans here because it indicates that the issue raised was not so much what the City did wrong or did in violation of the judgments, but what it failed to do to comply with the judgments apparently under the belief that it had already complied.
We are of the opinion that the exceptions were properly overruled.

THE FINDING OF A JUDGMENT OF CONTEMPT
The third error assigned is that the court erred in finding the City guilty of contempt, because it found that the City's disobedience of the judgments was not "wilful". A consideration of this issue causes us to necessarily consider to some degree the balance of the errors assigned, except for Error No. 4 concerning prescription and laches. The judgment of contempt is of course, based upon the entire record and it was necessary for the trial court to consider each one of these specific items in reaching judgment. However, since we disagree, in part at least, with the judgment of contempt we do not find it appropriate at this time to pass final judgment upon these allegations of error.
The record in this case is quite voluminous and complicated by the fact that reference must be had to the prior proceedings herein to determine if compliance with the judgments was effected. The trial judge obviously gave this matter long and careful consideration. He gave quite lengthy and detailed reasons for judgment and revealed each aspect of the case in a clear and scholarly manner. We are in substantial agreement with nearly all of his conclusions, except that his findings of fact require us to disagree with his conclusion of law relating to "wilful disobedience of any lawful judgment, order, mandate, writ, or process of the court". LSA-C.C.P. art. 224(2).
The trial judge found that the City had not complied with the judgment relative to pay raises and the judgment relative to longevity pay. We find it unnecessary at this time to discuss these issues in great detail except to say that they were based upon both the evidence in the present proceeding and upon the principle of res judicata applying to the previous judgments. An examination of the record discloses ample basis for these findings.
However, the trial judge considered the fact of non-compliance to be the equivalent of contempt and used the following language:
Relative to pay raise:
"* * * and that the City must comply with the judgments and pay the amounts therein set forth. Inasmuch as the City has not done so (or sought relief *785 from so doing prior to the filing of the Rules for Contempt), the City is in contempt of the said Orders as set forth in the judgment of July 11, 1969."
Relative to longevity:
"The Court is therefore of the opinion that there is no merit to the City's present contention that they are in compliance with the Orders of this Court as contained in the Judgment of July 11th, 1969, which Judgment, we repeat, is res judicata.
The Court must accordingly hold the City in contempt of its said Order contained in the Judgment of July 11th, 1969."
The Court then considered the issue of vacation periods (which we shall consider separately later) and concluded that his findings now brought into focus the authority to punish.
"Having held that the City is in contempt of the Orders of this Court as set forth in the Judgments of July 11th, 1969, rendered in the matters Numbered 494-227 and 494-228, the question now posed is that of the authority of this Court to force compliance by punishment or otherwise."
The Court considered that the City's action could be a constructive contempt as defined in LSA-C.C.P. art. 224(2)[1] which reads as follows:
"A constructive contempt of court is any contempt other than a direct one.
Any of the following acts constitutes a constructive contempt of court:
* * * * * *
(2) Wilful disobedience of any lawful judgment, order, mandate, writ, or process of the court;
The reasoning of the Court continues:
"Did the City wilfully disobey the orders of this Court?
Although this Court has now found that the City's arguments urged in connection with matters 494-227 and 494-228 are without merit, this finding is to some extent based upon the fact that the judgments rendered are res judicata, and upon the opinion of this Court that the arguments are otherwise without merit for the reasons set forth herein. At the same time the Court cannot but recognize the fact that the arguments have been advanced in good faith, and on the basis of a conscientious belief in their validity. In addition, the Court must take judicial knowledge of that which is common knowledge, namely, the financial condition of the City, and the City's needs for finding funds with which to supplement the firemen's salaries, as provided by the said Judgments of July 11, 1969, as well as to find funds with which to maintain all municipal services and supplement the pay of all underpaid City employees.
Under all of these circumstances, it is now possible for this Court to hold that the City's contempt was wilful, and failing to so find, the Court is without power to punish."
We cite the reasons of the trial court at some length because we find it appropriate to point out wherein our disagreement arises. We have examined the record before us and we find ample basis for the finding that the City was not in wilful disobedience. Our disagreement arises because it appears to us that the trial judge considered the issue of "wilful disobedience" only in reference to the liability *786 to punishment whereas we consider such a finding necessary to constitute the constructive contempt itself.
In this regard, we point out that art. 224 contains the definition of the acts of contempt denounced whereas the procedure for punishment follows in art. 225 and the penalties in arts. 226 and 227. Wilful disobedience is an essential ingredient of the contempt itself and without such a finding there can be no finding of constructive contempt. Art. 227 provides that a person may not be adjudged guilty of contempt except for misconduct defined as such by law. See also La.Const. Art. XIX § 17.
The record adequately reflects that the city did not wilfully refuse to comply with the orders of the court, but, because of its erroneous interpretation of the law, was under the mistaken belief that it was already in compliance and paying more than the statutes required so that no further action was required.
The word "wilful" is one which has several meanings used in its popular sense. Webster's New International Dictionary, Second Edition, Unabridged, defines it:
"Wilful, wilful
2. Self-determined; voluntary; intentional; as, willful murder.
3. Governed by will without yielding to reason; obstinate; perverse; stubborn; as, a willful man or horse."
As pointed out in Ballentine's Law Dictionary:
"A word of several meanings, the meaning in the particular case often being influenced by the context. Spies v. United States, 317 U.S. 492, 87 L.Ed. 418, 63 S.Ct. 364."
We are of the opinion that wilful disobedience means an act or a failure to act that is done intentionally, knowingly and purposely, without justifiable excuse.
The trial court found that the City's position was taken in good faith and on the basis of a conscientious belief in the validity of its interpretation of the law. He reasoned that the City's position was such that a finding of wilful contempt could not be made until some time for compliance had elapsed after his present judgment in which he pointed out the error of the City's position. In the face of this situation, we cannot say that the City did not have a justifiable excuse or that it intentionally refused to obey the Court's mandate and we must reverse the judgments of contempt.
However, we feel, as did the trial court, that his explanation of the prior judgments rendered has now removed that obstacle from the City's compliance with the prior judgments. We feel it proper to now remand these matters to the trial court with instructions to set a reasonable time within which the City shall take appropriate action to comply with his mandate or face contempt proceedings as authorized in LSA-C.C.P. art. 225 et seq.
It is additionally argued to us that the City does not have sufficient revenues to comply with the proposed increases in pay. We can only refer to the provision of LSA-R.S. 33:2922 relative to the ranking of expenditures from revenues of municipal corporations and parishes. There is no showing of impossibility of compliance in this record.

VACATION PERIOD
The appeal in case No. 4783 is by the Firemen from the judgment of the trial court holding that the City was in compliance with its previous judgment relative to paid vacation periods and dismissing the Rule for contempt filed by the Firemen.
There are a number of matters urged to us but these are dependent upon the sole issue of the interpretation of the word *787 "day" as a calendar day or a work day or work shift.
LSA-R.S. 33:1996 (as amended by Act 57 of the Extra Session of 1968) provides as follows:
"Firemen in municipalities, parishes and fire protection districts to which this Subpart applies, after having served one year, shall be entitled to an annual vacation of eighteen days with full pay. This vacation period shall be increased one day for each year of service over ten years, up to a maximum vacation period of thirty days, all of which shall be with full pay. The vacation privileges herein provided for shall not be forfeited by any member of the department for any cause. Firemen employed on January 6, 1969 shall have their present longevity considered as a factor in the computation of their vacation benefits as provided herein.
The provisions of this section shall in no way be construed to affect in any manner any presently existing system of computing vacation periods under which greater vacation benefits are granted than those provided for herein and the same shall continue in full force and effect."
The court, in its judgment of July 11, 1969, ordering the City "to implement the provisions of LSA-R.S. 33:1996 as amended to provide:
"1) A vacation period amounting to eighteen (18) days with full pay for all employees of the Fire Department of the City of New Orleans who are employed less than ten (10) years, but more than one year as of January 6, 1969.
2) A vacation period of eighteen (18) days plus one additional day for each year of service over ten (10) years up to a maximum of thirty (30) days with full pay for all those employees of the Fire Department of the City of New Orleans who are employed by the City of New Orleans for more than ten (10) years.
3) To appropriate a sum sufficient to pay for these vacation periods."
It is apparent that the judgment closely follows the statute and both simply say "days" without limitation.
In his reasons for judgment in the present contempt proceedings, the court stated:
"The court is of the opinion that based upon the plan as proposed by the Fire-fighters, and agreed to by the Citysubsequent to the Judgment of July 11, 1969the Firemen are generally receiving the paid vacation provided by La.R. S. 33:1996, as amended."
The Fireman contend that this is in error for two reasons: (1) That the City stipulated that the word "days" in the statute meant working days, and (2) That under the present system of working periods, or shifts, the Firemen are not receiving the appropriate vacation period to correspond with the working days. It may be well at this point to give the background which brings us to the present situation. At the time of the original trial of this case, the Firemen worked a 12-hour shift of 5 consecutive days, followed by 3 consecutive days off, then working for a 12-hour shift for 5 consecutive days, followed by 2 consecutive days off, then completing the cycle by returning to the original 12-hour shift for 5 consecutive days.
The Court rendered judgment on July 11, 1969, and the above system continued in effect until November 2, 1969 at which time the working arrangement was changed. The change came about as the result of an agreement between the Firemen and the City in which they rearranged the schedule so that the Firemen still worked the same amount of time per week, but arranged differently.
Under the new arrangement, Firemen worked a 12-hour shift followed immediately without a break by a second 12-hour shift or a total of 24 consecutive work hours followed by 48 non-work hours, two *788 non-duty calendar days, and then completing the cycle again such that in time the 12-hour work periods or days average out to be the same. This was the system in effect at the time of the trial of the present proceedings in October, 1970. The result of this arrangement is such that when the Firemen take a vacation of eighteen work shifts of 12 hours each, a period of 30 calendar days elapse, and so the City contends that it is now affording the 30 day vacation period allowable as a maximum under the statute. The Firemen, on the otherhand contend that under this present system they are entitled to have off 30 work shifts or days of 12 working hours each, which would result actually in approximately 90 calendar days of vacation time.
We are of the opinion that the trial judge was correct in his interpretation of the work "days" as contained in LRS 33:1996. We have previously decided that this is a general law and that it applies to all Fire Department governing authorities throughout the State. The only way in which such a statute can be applied equally throughout the State is to determine that a day for annual vacation purposes means a calendar day. To rule otherwise would cause not only confusion in its application to other departments throughout the State, but even within the Fire Department in the City of New Orleans itself, wherein the actual working Firemen work different shifts and schedule arrangements than the other personnel in the department.
We are of the opinion that the lower court reached a proper decision in this matter. The stipulation referred to by the Firemen, insofar as it amounts to a conclusion of law in the interpretation of the statute, certainly could not bind the court in that regard. One of the very bases of the court's function is the interpretation of the law. Additionally, insofar as the stipulation was concerned with factual matters, it has been overcome by the new agreement of November 2, 1969, or at least modified by it greatly.
Additionally, we note that the Firemen do not contend that the City is not complying with the minimum vacation period of 18 days, only that the maximum of 30 days is not complied with. The effect of the present plan is to award more than 18 calendar days vacation time to men under 10 years service. This statute was designed to fix minimum benefits to the Firemen, and was not intended to limit benefits in excess of the minimum. In other words, the statute is mandatory in that governing authorities shall provide at least the benefits as provided in the statute, but there is no compulsion to require the governing authority to provide more than those benefits, although it is apparent that the governing authority can if it so chooses.
For the reasons above, the judgment of the trial court in this case is affirmed.

DECREE IN APPEALS NOS. 4784 AND 4785
It is ordered, adjudged and decreed that the judgment of contempt against the defendant-appellants herein are now reversed and these matters are remanded to the trial court to fix a reasonable period of time for defendants to comply with the judgments of July 11, 1969, after which, should they fail to comply, further contempt proceedings may be invoked as authorized in LSA-C.C.P. arts. 225, 226, 227, and LSA-R.S. 13:4611. Assessment of the costs of these appeals to await the final outcome of these cases.

DECREE IN APPEAL NO. 4783
It is ordered, adjudged and decreed that the judgment of the trial court is affirmed. Plaintiff-appellants to bear the costs of this appeal.
In part, reversed and remanded. In part, affirmed.
NOTES
[1] The appellees argue to us that section 10 of that same article would also be applicable, however, it is clearly inappropriate by a simple reading thereof:

"(10) Any other act or omission punishable by law as a contempt of court, or intended to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority, and which is not a direct contempt."