457 So.2d 189 (1984)
Cleo Fred MARTIN, Plaintiff-Appellant,
v.
Carolyn Staton MARTIN, Defendant-Appellee.
No. 16488-CA.
Court of Appeal of Louisiana, Second Circuit.
September 26, 1984.
*190 Sanders & Sanders by Martin S. Sanders, Jr., Winnfield, for plaintiff-appellant.
Blackwell, Chambliss, Hobbs & Henry by James A. Hobbs, West Monroe, for defendant-appellee.
Before HALL, FRED W. JONES, Jr. and SEXTON, JJ.
HALL, Judge.
The appellant, Cleo Fred Martin, appeals from the judgment of the trial court granting him a reduction in alimony, but finding him $3,639 in arrears in payment of alimony and child support and finding him guilty of contempt for failure to pay alimony and child support. Appellant contends that his alimony payments should be terminated, that his child support payments should be reduced, and that his contempt conviction should be reversed. We affirm the judgment of the trial court.
The Facts:
Cleo Fred Martin and Carolyn Martin were divorced on July 30, 1979. Custody of the three sons was awarded to the mother, and the father was ordered to pay $400 per month in alimony and $500 per month in child support.
*191 Mr. Martin filed a rule for termination of alimony on March 14, 1980, claiming that Mrs. Martin was then able to support herself as a result of being employed by Glenwood Hospital in West Monroe. Mrs. Martin answered, denying Mr. Martin's claim, and asking that should alimony be decreased or terminated, child support be increased due to the father's increased ability to pay, and due to the increased needs of the minor children. Mrs. Martin later filed a petition in August, 1980, seeking arrearages, and seeking to have Mr. Martin held in contempt for nonpayment. After service of the rule nisi, Mr. Martin made his alimony payments current. When judgment was rendered on the rule in November, 1980, Mr. Martin was found not to be in contempt of court, although Mrs. Martin was awarded attorney's fees and costs.
On September 7, 1983, Mr. Martin again sought termination of alimony, and on October 21, 1983, Mrs. Martin again sought arrearages and a finding of contempt. At trial Mr. Martin testified that in June, 1982, without consent of the court, he reduced his child support payments by one-third when his oldest son turned 18, and that his wife did not complain of this action. He also testified that he did not pay alimony in September or October 1983 on advice of counsel, who told him that the termination would be retroactive to the filing of his petition. Mr. Martin's testimony further revealed that his monthly gross income was $4,960, while his take-home pay was approximately $2,100 per month. In contrast, Mrs. Martin testified that her take-home pay from her job at Glenwood Hospital was $629.41 a month, while her estimated expenses for herself, her children, and her household were $1,441.11 per month.
On January 4, 1984, the trial court signed a judgment ordering Mr. Martin's alimony payments reduced from $400 per month to $300 per month, and finding Mr. Martin guilty of contempt for nonpayment of alimony and child support. He was also found to be in arrears in the amount of $3,639. Although sentenced to 30 days in jail, his sentence was suspended, and he was given 60 days in which to pay the arrearage. Mr. Martin appealed, Mrs. Martin did not appeal or answer the appeal.
Issue No. 1:
The first issue in this case concerns the trial court's ruling that alimony payments be reduced. For such a reduction to be warranted, the party seeking termination or reduction must establish a significant change or modification in the parties' circumstances since the time permanent alimony was set. Gray v. Gray, 451 So.2d 579 (La.App. 2d Cir.1984). Here appellant, who seeks termination of alimony rather than mere reduction, has a monthly gross income of nearly $5,000 and a monthly take-home pay of at least $2,100. Appellant does not contend, nor do his earnings reflect, that a change in circumstances in the amount of his earnings prevents his paying $300 per month in alimony. On the other hand, appellant does contend that his former wife, who is now employed full-time, no longer needs alimony. The record does not support this contention. Out of the $1,441.11 the appellee estimates as her monthly expenses, she allots $426.24 to herself, while the remainder is allotted to her three children (only $50 is allotted to the child who is no longer a minor). The Court, however, is not limited to considering only the amount the appellee estimates as her own expenses when determining her entitlement to alimony. In evaluating the need for alimony, the Court must examine the totality of the circumstances indicative of the parties' financial condition. Gray, supra. "[T]he obligation of the parents to support their dependent children is one of the circumstances which the Court must consider in determining the entitlement and amount of alimony after divorce. LSA-C.C. Art. 160." Lewis v. Lewis, 404 So.2d 1230 (La.1981). Although one of appellee's three children is now a major, appellee's half of the estimated expenses for the two minor, dependent, children, is over $470 per month. Combined with the $426.24 appellee needs for herself, she has approximately $900 per month in maintenance expenses, but less than $630 in take-home pay. The difference between *192 the two figures just mentioned, approximately $270 per month, does not vary greatly from the $300 per month in alimony awarded by the trial judge. Calculated another way, approximately $940 in monthly expenses is allotted to the children. Subtracting the $500 child support payments made by appellant, there remains approximately $440 in expenses related to the children which appellee must bear out of her $630 take-home pay, leaving her in need of close to the $300 alimony awarded by the trial court. Furthermore, since the trial court has much discretion in determining the amount of an alimony award, such an award will not be disturbed absent a clear abuse of that discretion. Anderson v. Anderson, 441 So.2d 413 (La.App. 4th Cir. 1983); Gabriel v. Gabriel, 419 So.2d 538 (La.App. 5th Cir.1982). Thus, we find the trial judge in the present case did not abuse his discretion in refusing to terminate alimony and in reducing alimony to $300 per month.
Issue No. 2:
The second issue raised by appellant concerns the trial court's failure to reduce child support payments in light of one child's becoming a major. The record reveals that appellant never requested the trial court to modify these payments. While appellant requested termination of alimony on September 7, 1983, he made no mention of child support. His only reference to the son's majority came in his answer to the mother's petition for arrearages and contempt, and was offered as an explanation of his reduced child support payments. The trial judge apparently did not consider the issue of modification of child support payments to be before him since neither party prayed for such a modification. We do not consider the issue properly before us on appeal.
We note, nevertheless, that the original child support order of $500 per month was in globo, and that automatic modification of such support payments by operation of law does not occur when the oldest child reaches majority, but only when the youngest child becomes a major. LSA R.S. 9:309. Underlying this rule is the possibility that remaining minor child may be entitled to an increase that would offset any reduction. Appellee's uncontradicted testimony shows her estimated expenses for the two minor children were over $940 per month. Assuming appellant should be responsible for at least half of these expenses, his child support payments would be over $470 a month for the two remaining minors. This amount is not significantly different from the $500 per month appellant is currently obligated to pay. The $500 per month is less than the children's needs and within appellant's ability to pay. Thus, even if the issue of modification were considered by the trial judge, and were properly before us on appeal, we could not conclude that the trial judge abused his discretion by not reducing child support payments.
Issue No. 3:
The final issue concerns the trial judge's holding appellant in contempt for nonpayment of alimony and child support. As provided in LSA-C.C.P. 224(2), one may be found in contempt of court for willfully disobeying a lawful order of the Court. "Willful disobeyance" has been defined as "an act or failure to act that is done intentionally, knowingly and purposely, without justifiable excuse." New Orleans F.F. Ass'n Loc. 632 v. City of New Orleans, 260 So.2d 779 (La.App. 4th Cir.1972). In the present case the record shows that the 1979 divorce judgment clearly ordered appellant to pay both child support and alimony. Appellant, by his own admission, ceased payments for alimony and reduced payments for child support. Appellant contends, however, that a finding of contempt was improper because his cessation of alimony was based on advice of counsel, and because his reduction of child support was based on his oldest son's becoming a major. Appellant further contends that his wife's acquiescence in the reduced payments also precludes the finding of contempt. These contentions all address the question of *193 whether a justifiable excuse existed, rather than whether appellant's acts were intentional, knowing, or purposeful. Certainly appellant must have been aware that his actions were in contravention of a court order.
The trial judge is vested with great discretion in determining whether a party should be held in contempt for disobeying the Court's orders. West v. West, 438 So.2d 706, 709 (La.App. 2d Cir.1983); Litton v. Litton, 299 So.2d 458 (La.App. 2d Cir.1974). We find the trial judge did not abuse his discretion in the present case.
Counsel's advice was simply one factor for the trial court's consideration and only related to alimony for two months. Mr. Martin was not making his first appearance before the court on contempt for nonpayment, nor were Mr. Martin's arrearages mainly due to nonpayment of alimony. More than 75% of the arrearages were due to nonpayment of child support. Appellant does not contend that counsel advised him to reduce child support payments. Rather appellant contends that he was not in contempt because the reduction was based on his oldest son's becoming a major, and because his wife did not protest the reduced payments. However, where the child support award is in globo, as in this case, the father is not entitled to unilaterally reduce his child support payments on a pro rata basis without first seeking court modification of the judgment. Wisdom v. Wisdom, 356 So.2d 1111 (La. App. 2d Cir.1978); Halcomb v. Halcomb, 352 So.2d 1013 (La.1977). Nor can appellant claim an agreement with the appellee to reduce payments. The fact that the mother did not take legal steps following the reduction does not constitute implied consent to the father's unilateral action. Wisdom, supra. Furthermore, because a contempt proceeding is designed for vindication of the dignity of the court rather than for the benefit of a litigant, Robertson v. Robertson, 258 So.2d 125, (La.App. 2d Cir.1972), the mother's inaction could not cure the father's slighting of the dignity of the court. We find appellant's unilateral reduction of child support payments unjustifiable and his explanation insufficient. Thus, as stated earlier, we detect no abuse of discretion in the trial court's finding of contempt.
Accordingly, for the reasons stated above, the judgment below is affirmed at appellant's cost.
Affirmed.