719 So.2d 113 (1998)
Thomas W. BULLOCK
v.
Sue Ellen BULLOCK.
No. 98-CA-0263.
Court of Appeal of Louisiana, Fourth Circuit.
August 19, 1998.
*114 Terence L. Hauver, Lowe, Stein, Hoffman, Allweiss & Hauver, New Orleans, for Plaintiff-Appellant.
R. Scott Buhrer, Flanders, Flanders & Buhrer, Metairie, for Defendant-Appellee.
Before KLEES, LOBRANO and LANDRIEU, JJ.
*115 LOBRANO, Judge.
The father appeals a trial court judgment which denied his rule to decrease child support and granted the mother's rule to increase.
Thomas Bullock and Sue Ellen Bullock entered into a consent judgment on November 3, 1994 for the support of their three children, all of whom were minors at the time. The judgment also included a provision that when the eldest child, Elizabeth, reached majority, child support would be $2,396.00 per month, plus health insurance premiums for Joseph and James who were still minors. On May 30, 1997 Mr. Bullock filed a rule to decrease and on August 26, 1997, Mrs. Bullock filed a rule to increase. Mr. Bullock asserted that circumstances changed because school tuition had decreased, while Mrs. Bullock asserted additional medical expenses and an increase in Mr. Bullock's income.
A hearing on both rules was held on December 11, 1997. The parties stipulated that there was a change of circumstances, although neither party elaborated.[1] The trial judge heard testimony and received evidence relative to both parties' income and the needs of the two children.[2] In oral reasons, the court concluded that Mr. Bullock's monthly income was approximately $22,700.00 per month "taking into account his income from Equitable, other interest that he receives and also looking at his business expenses" and that Mrs. Bullock's income was approximately $2,800.00 per month. Based on those findings, the court raised the child support award to $3,000.00 per month, and continued the maintenance of health insurance. The Court also awarded the dependency exemptions to Mr. Bullock although the written judgment, signed December 6, 1997, is silent in this regard. Mr. Bullock perfects this appeal asserting seven assignments of error which we consolidate as follows:
1) The trial court erred in concluding his monthly income was $22,700.00;
2) The trial court erred in its computation of Mrs. Bullock's monthly income;
3) The trial court failed to consider, and Mrs. Bullock failed to prove, the children's actual needs.
4) The trial court erred in not providing in the written judgment that Mr. Bullock be awarded the dependency exemptions.

DISCUSSION:
A change in circumstances from the time of the previous award is necessary to support a reduction or increase in child support. La. R.S. 9:311. Where the combined adjusted gross income of both parents is $10,000.00 per month or less, "[t]he court shall determine the basic child support obligation from the schedule in R.S. 315.14." La. R.S. 9:315.2. However, if the combined adjusted gross income exceeds $10,000.00 per month "the court shall use its discretion in setting the amount of the basic child support obligation...." La. R.S. 9:315.10. The court's discretion in that regard includes consideration of a child's standard of living, as well as the child's needs. Langley v. Langley, 96-0414 (La.App. 4 Cir. 9/18/96), 681 So.2d 25, writ denied, 96-2489 (La.12/6/96), 684 So.2d 935. "Children are entitled to the same standard of living that they would enjoy *116 if they lived with their father if their father's financial circumstances are sufficient to permit this." Hector v. Raymond, 96-972 (La.App. 3 Cir. 4/2/97), p. 5, 692 So.2d 1284, 1287, writ denied, 97-1134 (La.6/13/97), 695 So.2d 978. Deviations from the guidelines shall not be disturbed on appellate review absent manifest error. La. R.S. 9:315.12.1.

MR. BULLOCK'S INCOME
First Mr. Bullock argues that the trial court erred by concluding that he had a monthly income of approximately $22,700.00. His argument is predicated on the assertions that: (1) his detailed documentation for the first nine months of 1997 show business expenses of $4,434.64 per month; (2) that he will not receive the same bonus (termed a "Growth Payment") that was received in January, 1997; and (3) that the court should have taken into account his income tax obligations. We address each contention separately.

a) Business expenses:

The child support guidelines (hereinafter referred to simply as "the guidelines") include within its definition of "adjusted gross income" a deduction for ordinary and necessary expenses required to produce income where a party is self-employed or a sole proprietor of a business. La. R.S. 9:315(4)(c). Mr. Bullock is the agency manager of Equitable Life Insurance Society for the State of Mississippi. He receives a salary and commissions which he admits, for the nine months of 1997, totaled $199,124.28 or $22,124.92 per month. He argues, however, that he has business expenses which the trial court failed to consider, and thus there is no support in the record for the court's $22,700.00 a month finding.
Even though the monthly income of the parties exceeds the guidelines, we see no reason why the guidelines' definition of adjusted gross income should not be considered by a trial judge in determining the monthly income of a party. In oral reasons, the trial judge stated that she considered Mr. Bullock's business expenses, although there is no articulation by the court of any details. In brief, Mr. Bullock argues the particular expenses of business meals, legal fees, auto use and tax preparation. Mrs. Bullock argues that an extrapolation of Mr. Bullock's nine month salary over the entire year of 1997 would show a gross income such that deducting reasonable expenses would result in an adjusted gross income figure comparable to that found by the trial court.
Mr. Bullock's legal position that ordinary and necessary business expenses should be considered in cases such as this one is correct. However, without knowing the trial judge's thinking which led to her conclusions, our review considers the whole record. In Mr. Bullock's favor is his 1996 income tax return, in evidence, wherein Schedule C itemizes his expenses. His total income after expenses for 1996 was $244,764.00 or $20,397.00 per month, or approximately $2,000.00 per month less than the trial judge's determination. While Mr. Bullock seeks a $4,400.00 per month reduction for business expenses from his asserted gross of $22,124.92 per month, weighing against that assertion is the extrapolation of his 1997 W-2 for wages and commissions from Equitable Life for the full twelve months which results in a substantial increase ($16,000.00) from 1996.[3] In addition, Mr. Bullock did not include any interest payments in his nine months of 1997 earnings. In 1996, his return showed $5,462.00 of interest. Thus, taking all these various factors into consideration we cannot say the trial court ignored Mr. Bullock's business expenses or abused her discretion in that regard.

b) Bonus Payments:

In January of 1997, Mr. Bullock received what is termed a "Growth Payment," *117 in the amount of $35,837.44. That amount is included in the $188,000.00 for 9 months of wages and commissions from Equitable Life. Mr. Bullock argues it is a one time extraordinary item of income and should not have been included in his gross income, citing La. R.S 9:315(4)(d)(iii). That statute excludes from gross income "[e]xtraordinary overtime or income attributed to seasonal work regardless of its percentage of gross income when, in the court's discretion, the inclusion thereof would be inequitable to a party."
It is entirely within the trial court's discretion to include a bonus payment in determining gross income. See, Zatzkis v. Zatzkis, 632 So.2d 307 (La.App. 4 Cir.1993), writ denied, 94-0157 (La.6/24/94), 640 So.2d 1340 and 94-0993 (La.6/24/94), 640 So.2d 1341. While the record is not clear whether a similar bonus was paid in 1996, based on the 1996 return it appears that it was. Regardless, Mr. Bullock has not shown how the court abused its discretion in this regard and we are satisfied that she did not.

c) Tax Obligations:

Mr. Bullock argues that the court must consider his after-tax dollars in determining his ability to pay. In support, he makes the statement in his reply brief that the guidelines have a "built-in accounting for all tax effects B income taxes, dependency exemptions, etc." Thus he asserts the trial court erred by not reducing his gross income by his effective tax rate of 25.8%. We disagree.
As we previously noted, consideration by the trial court of the guidelines' definition of adjusted gross income is appropriate even though the combined incomes exceed the statutory guideline amount. And, despite Mr. Bullock' contrary argument, we find no provision in the guidelines for the deduction of income tax obligations in determining adjusted gross income. Mr. Bullock says those deductions are "built in" the guidelines, but fails to explain.
In Naquin v. Naquin, 610 So.2d 981 (La. App. 1 Cir.1992), the trial judge used a mother's net income in determining her former husband's child support obligation. On appeal, the First Circuit recalculated the child support obligation using the mother's gross income stating "we must amend the calculations to reflect compliance with La. R.S. 9:315(1), which specifies gross income as the beginning point for all calculations." Id. at 985. Thus, the trial court properly used Mr. Bullock's gross income in determining his child support obligation.

MRS. BULLOCK'S INCOME
Mr. Bullock argues that the trial court erred in determining Mrs. Bullock's gross income to be $2,800.00 per month. He claims that Mrs. Bullock's monthly gross income was proven to be $3,270.83. Mr. Bullock included a list of Mrs. Bullock's alleged income which included IRA earnings and a higher figure for interest income from a Hibernia Bank account.
Mrs. Bullock responds that the evidence established her monthly gross income to be approximately $3,000.00. She contends that her IRA earnings were properly not considered by the trial court because these earnings are not available for distribution until she is 59½ years old. Mrs. Bullock also disputed that the Hibernia Bank account in question was earning $192.50 per month in interest; rather, she states that the evidence shows her monthly interest on this account to be approximately $35.00. According to Mrs. Bullock, the trial court's determination that her monthly income was $200.00 less than it actually is was harmless error in view of the fact that the combined gross income of the parties is over $25,000.00 per month.
We agree that Mrs. Bullock's IRA earnings were properly not included in the determination of her gross income. We initially note that the trial judge sustained Mrs. Bullock's objection to the introduction of evidence regarding this IRA account because earnings on this account are not available to her and do not form part of her income. Additionally, a review of this proffered document reveals that Mrs. Bullock has made no withdrawals since the inception of the account. With regard to the Hibernia account in question, a review of the evidence supports Mrs. Bullock's calculations as to her monthly interest earnings.
*118 We find that the approximate $200.00 difference between Mrs. Bullock's and the trial court's calculations does not constitute an abuse of the trial court's discretion given the fact that the combined total income of the parties greatly exceeds the guidelines. Simply, that slight difference does not rise to the level of an abuse of discretion in the court's ultimate award.

CHILDREN'S NEEDS
Mr. Bullock argues that the trial court incorrectly evaluated the needs of the minor children and the amount of child support required by Mrs. Bullock to meet those needs. Mrs. Bullock claimed a total monthly budget expense of $4,380.00 and allotted $3,365.00 or 76.8% of that amount to the two minor children.
According to Mr. Bullock, some amounts claimed by Mrs. Bullock were admitted to be incorrect by her at the hearing, some amounts were disproved by documents presented at the hearing and some amounts were unsubstantiated by the evidence presented. Therefore, Mr. Bullock claims that Mrs. Bullock has exaggerated her child related expenses and the child support award should be reduced to reflect a more accurate figure for child related expenses incurred by Mrs. Bullock each month.
In the November 3, 1994 consent judgment, Mr. Bullock agreed to pay child support for his two minor children in the amount of $2,396.00 plus health insurance, effective June 28, 1995. This amount was a reduction of the child support award owed by Mr. Bullock between January 18, 1994 and June 28, 1995 and reflected the oldest child reaching the age of majority. In the judgment rendered on December 16, 1997, the trial court ordered Mr. Bullock to pay monthly child support of $3,000.00 plus health insurance premiums for the two minor children.
When setting the amount of child support to be paid by a parent, the court should strive to maintain the lifestyle of the child, when possible, while considering the child's reasonably proven expenses and the parent's ability to provide. Falterman v. Falterman, 97-192 (La.App. 3 Cir. 10/8/97), 702 So.2d 781. Furthermore, as stated earlier in this opinion, children are entitled to the same standard of living that they would enjoy if they lived with their non-custodial parent, if the non-custodial parent's financial circumstances are sufficient to permit this. Hector v. Raymond, supra.
A review of the record reveals that Mrs. Bullock presented sufficient proof regarding her monthly expenses for her two minor children and an award of $3,000.00 is reasonable to maintain their pre-divorce lifestyle and/or the lifestyle they would enjoy if they lived with their father.
Certainly, Mr. Bullock's ability to provide this amount of financial support for his children has been more than sufficiently established. The record in this case shows that the post-divorce lifestyle of the two minor children is modest when compared to the standard of living now enjoyed by Mr. Bullock. Most of Mrs. Bullock's child-related expenses involve such basic items as housing, utilities, groceries, transportation, school tuition for one of the children and medical expenses not covered by insurance. Mrs. Bullock also listed modest amounts for clothing expenses and entertainment, including vacations. She testified that the amount spent on clothing and vacations for the children was much greater during her marriage to Mr. Bullock. The record shows that these two teenage boys are involved in a variety of normal teenage extracurricular activities, all of which have reasonable related expenses.
Considering the children's proven needs and expenses and their father's substantial means, we do not find an increase of Mrs. Bullock's monthly child support award to $3,000.00, or approximately $300.00 extra per child, to be an abuse of the trial court's discretion.

CHILD DEPENDENCY EXEMPTIONS
Mr. Bullock contends that the written judgment should have included an award of the dependency exemptions as orally granted to him at the hearing. We agree and will amend the judgment to state that Mr. Bullock has the right to claim the federal and state tax dependency deductions for his two minor children.

*119 CONCLUSION

The record fails to disclose the circumstances of the parties when the consent decree of November 3, 1994 was agreed to. At the trial of their respective rules, it appears the parties took the approach that the court should decide child support de novo. At least the record evidence suggests that approach. Regardless, even utilizing Mr. Bullock's 1996 adjusted gross of $20,397.00 per month, we cannot say the court abused its discretion by raising the support of two teenage boys by $300.00 per month per child. The parties had previously agreed to $2,400.00 per month for both. We find no manifest error which warrants a reversal. Of course, Mr. Bullock has the right to seek a reduction when his son, Joseph, who was seventeen at the time of the hearing, reaches the age of majority or if, in fact, his income is substantially reduced.
Accordingly, we amend the judgment to provide that Thomas Bullock is entitled to claim the federal and state tax dependency deductions for his two minor children. In all other respects, the judgment is affirmed.
AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] At the opening of the hearing, counsel for Thomas Bullock stated:

"Your Honor, given our discussion in Chambers and the little bit of discussion we had concerning case law, I think both counsel can agree number one, that there has been a change of circumstances in this case. Both parties have alleged that and I don't think that is addition."
In Mr. Bullock's rule to reduce child support, he alleges that private school tuition for the two minor children would decrease by approximately $7,000.00 per year for the 1997-1998 academic year. He also alleged that Mrs. Bullock's income had increased since the last consideration of child support. In Mrs. Bullock's rule to increase child support, she alleges that she has had to incur significant expenses for family and individual therapy to address serious emotional problems being experienced by the two minor children. She also alleges increased housing expenses and a new expense to cover transportation for one of the children to and from a private school in Metairie. Mrs. Bullock further alleges that Mr. Bullock's income has substantially increased since the November 3, 1994 consent judgment between the parties.
[2] At the time of the hearing, James was 14 and Joseph was 17.
[3] Mr. Bullock's 1996 tax return shows W-2's from Equitable in the amount of $182,542.19 as salary and statutory W-2 (commissions) of $43,860.11 or a total from Equitable of $226,402.30. For nine months of 1997 he shows a total of $188,038.00 in salary and commissions from Equitable. Extrapolating that amount over 12 months would result in total salary and commissions of $250,716.00. However, because the bonus of $36,000.00 was included in the nine month figure, the extrapolation must deduct $9,000.00 ($3,000.00 per month for 3 months) to arrive at the increase of $16,000.00 for the year.