989 So.2d 290 (2008)
Gregory Alan SCOTT, Plaintiff-Appellee
v.
Tina Marie Maxwell SCOTT, Defendant-Appellant.
No. 43,455-CA.
Court of Appeal of Louisiana, Second Circuit.
August 13, 2008.
*292 Teresa Culpepper Carroll, Jonesboro, for Appellant.
Monique Babin Clement, for Appellee.
Before CARAWAY, DREW and MOORE, JJ.
CARAWAY, J.
The primary dispute in this child support action concerns the measure of the father's income from his solely owned corporations. The corporations' income was reported on the father's personal tax returns along with the small salary he received from the companies. Instead of the total of that combined income being utilized for the determination of the father's income, the trial court found a much lower amount for the father's earnings, an amount closer to his actual salary received from the corporations. The mother appeals the award of child support as improper under the child support guidelines' definition of "gross income." Finding merit in appellant's argument, we amend and increase the child support award.

Facts
The parties divorced in 1997 and were awarded joint custody of their two children. Tina Scott Fair ("Tina") was designated the domiciliary parent. She remarried in 2005. The father, Gregory A. Scott (hereafter "Greg"), also remarried and has two more children. Greg was granted reasonable visitation and his monthly child support obligation for the two children was set at $750 after the birth of the youngest child in May 1997. Tina was ordered to maintain health insurance through her employment for both children, and the parties split non-covered medical expenses. They claimed one child each as a dependent for federal income tax deduction purposes.
In 2005, certain custody disputes erupted which ultimately ended in a consent arrangement and judgments that left unaltered Tina's status as the custodial parent entitled to receive child support. In the course of these custody challenges by Greg, Tina reconvened for payment of delinquent child support in October 2005. She alleged that since 2000, Greg underpaid by $50 the monthly child support obligation fixed at $750 per month, resulting in a $3,300 arrearage. In addition to *293 recovery of the arrearage, Tina moved the trial court to find Greg in contempt for noncompliance with the 1997 support judgment, for judicial interest and attorney's fees. Tina's petition also prayed for increased child support based on changes in the parties' incomes.
The trial of Tina's claims occurred in the summer of 2006. Greg defended the contempt action and arrearage claim on the basis of an agreement which he allegedly reached with Tina in 2000 concerning the children's health insurance. At that time, Tina removed the children from her employer's health plan for a cost savings to her of $100 per month, and Greg included the children in his company's health plan coverage. Accordingly, Greg claimed that the reduction made in his monthly support payments from $750 to $700 resulted from the change in the parties' responsibilities for the children's health care.
Regarding the claim for increased child support, the evidence showed that Greg's income was derived from operation of three business corporations of which he was the sole shareholder. The most profitable business, People Centered Support Services, Inc. ("PCSS"), paid him an annual salary. The other two companies were People Unlimited, Inc. ("PU") and Children Unlimited, Inc. ("CU"), a nonprofit corporation. PCSS and PU were Subchapter S corporations.
From these businesses, Greg and his wife, Michelle, were each paid annual salaries of approximately $40,000 for the years 2003-2005. The trial court ultimately found Greg's annual income to be $66,000, or $5,500 per month. Tina's primary argument disputing Greg's level of income was based upon the Scotts' joint income tax returns which reported not only their salaries, but also the Schedule K-1 income for Greg's companies. The data from the Scotts' IRS Form 1040 joint tax returns revealed the following:

 2003 2004 2005
 --------- --------- ---------
Adjusted Gross
Income $393,753 $546,904 $353,755
Less Michelle's
salary (38,304) (46,508) (39,582)
 --------- --------- ---------
Salary and K-1
income
attributable to Greg $355,449 $500,396 $314,173
 _________ _________ _________
Total Federal Taxes
Paid $ 63,180 $111,454 $ 68,582

At the parties' request, the trial court ordered the trial transcript to be prepared and the parties then submitted post-trial briefs. On August 28, 2007, the trial court ruled from the bench, finding no contempt of court for Greg's nonpayment of the $50 differential in monthly child support. The trial court fixed Greg's adjusted gross monthly income at $5,500 per month, and allocated the federal and state income tax exemptions for both children to Tina. Greg's monthly child support obligation was determined to be $971.89 per month retroactive to November 1, 2005, based on the trial court's finding of both parties' monthly incomes. The judgment allocated court costs 60% to Greg and 40% to Tina, and further provided that if an agreement was not reached on the accountants' expert witness fees, a special hearing for taking evidence would be set.
Tina appeals the judgment contesting the trial court's failure to cast Greg in contempt of court for nonpayment of child support and the court's assessment of Greg's gross income under the child support guidelines.

Discussion

I.
In her first assignment of error, Tina argues that the trial court should have found Greg in contempt of court for failing to adhere to the original child support order of $750 per month after reducing *294 his payments by $50 per month in May 2000.
In a civil action to enforce a child support order, the trial court has power to fine or imprison the wilful offender for up to three months;[1] to fashion a coercive civil remedy with the threat of jail time, whether the offender's conduct is clearly shown to be wilful or not;[2] to modify the visitation or possibly modify the custody award;[3] and to award attorney's fees.[4]
In making these determinations, the trial court is vested with great discretion. Stephens v. Stephens, 30,498 (La. App.2d Cir.5/13/98), 714 So.2d 115; City of Kenner v. Jumonville, 97,125 (La.App. 5th Cir.8/27/97), 701 So.2d 223, writ denied, 97-2890 (La.1/30/98), 709 So.2d 718 and cert. denied, 524 U.S. 953, 118 S.Ct. 2371, 141 L.Ed.2d 739 (1998); Reeves v. Thompson, 95-0321 (La.App. 4th Cir. 12/11/96), 685 So.2d 575. The trial court's decision will only be reversed when the appellate court can discern an abuse of that discretion. Stephens, supra; Martin v. Martin, 457 So.2d 189 (La.App. 2d Cir.1984).
The trial court found that the parties agreed to reduce the monthly amount paid by Greg in exchange for Greg's putting both children on his health insurance policy, furnished by his corporation, at no additional premium expense. In the original orders fixing the child support obligations, Tina was obligated to provide this health insurance benefit for the children. In 2000, Tina ceased her payment of that child support obligation at the same time that Greg reduced his monthly support payments by $50. The trial court's oral ruling found that Tina's tacit acquiescence in Greg's reduced monthly payments supported Greg's version of the alleged compromise agreement concerning their responsibilities for the children's health needs. This conclusion by the trial court is fully supported by the facts, and the court's decision not to assess an arrearage or hold Greg in contempt is not an abuse of discretion. This assignment is without merit.

II.
Under the Louisiana Child Support Guidelines, La. R.S. 9:315, et seq., the combined adjusted gross income of both parties is used to determine the basic child support obligation. "Adjusted gross income" means gross income, minus only certain other support obligations not applicable in this case. La. R.S. 9:315(C)(1).
The portion of Louisiana's definition of "gross income" dealing with self-employed individuals upon which this dispute rests provides as follows:
Gross receipts minus ordinary and necessary expenses required to produce income, for purposes of income from self-employment, rent, royalties, proprietorship of a business, or joint ownership or a partnership or closely held corporation. "Ordinary and necessary expenses" shall not include amounts allowable by the Internal Revenue Service for the accelerated component of depreciation expenses or investment tax credits or any other business expenses determined by the court to be inappropriate for determining gross income for purposes of calculating child support.
La. R.S. 9:315(C)(3)(c).
One cannot avoid all or part of his child support obligation by exercising *295 exclusive control over a corporation wholly owned by him in order to limit his own salary. Sawyer v. Sawyer, 35,583 (La. App. 2d Cir.11/2/01), 799 So.2d 1226, writ not considered, 01-3189 (La.2/8/02), 808 So.2d 349; Verges v. Verges, 01-208 (La. App. 1st Cir.3/28/02), 815 So.2d 356. The self-employed owner of a proprietorship is entitled to deduct from gross receipts of that business only those "ordinary and necessary expenses required to produce income." Thomey v. Thomey, 33,000 (La. App. 2d Cir.4/7/00), 756 So.2d 698.
This court and other appellate courts have had numerous occasions for reconstructing and measuring a parent's "gross income" for purposes of the child support guidelines when that parent's work endeavors involved a business proprietorship or closely held corporation with separate (or commingled) accounting records for such business. Thomey v. Thomey, supra; Aydelott v. Aydelott, 42,161 (La.App. 2d Cir.5/7/07), 957 So.2d 350; Sawyer v. Sawyer, supra; Verges v. Verges, supra; Hudnall v. Hudnall, 00-0330 (La.App. 1st Cir.5/11/01), 808 So.2d 641; Baggett v. Baggett, 96-453 (La.App. 3d Cir.4/23/97), 693 So.2d 264. Significantly, the statutory measure of the "gross income" of such parent-controlled business starts with "gross receipts." Therefore, if the business has gross receipts earned from the parent's services or other business endeavor or product, the parent is considered to have gross income equal to those gross receipts unless the proprietor/parent demonstrates the "ordinary and necessary expenses required to produce" those gross receipts or income. The cited jurisprudence reveals attempts by a parent to shield or cloud his income-producing capacity through the accounting records of his business or corporation. Yet, the gross-receipts-less-ordinary-and-necessary-business-expense formula of the statute, which closely parallels the net business income measure for taxes, is a very straightforward accounting analysis.
Greg's two Subchapter S corporations provide services to people with disabilities to assist them with daily living, transportation, and vocational needs. The companies' receipts come primarily from the state. The total income or gross receipts for PCSS and PU for the tax year ending June 2005 were $1,898,295 and $755,667, respectively. The largest corporate expense by far pertained to salaries and wages.
Louisiana's definition of gross income under the child support guidelines makes a clear distinction between salary of an employed parent and income receipts from a parent's proprietorship of a business or closely held corporation. La. R.S. 9:315(C)(3)(a) and (c). Since these Subchapter S corporations were closely held, owned entirely by Greg, the salary he chose to pay himself is not the measure of his income under the support guidelines. His gross income for determining the child support obligation was the "gross receipts" "for purposes of income from" his "closely held corporation(s)," less the "ordinary and necessary expenses required to produce income" from his businesses. La. R.S. 9:315(C)(3)(c).
The trial court's analysis started not with the gross receipts of the corporations, but with Greg's salary of approximately $40,000. It then acknowledged certain "fringe benefits" which the businesses paid directly for Greg's benefit. Overall, the court's calculation appears to have been based upon its determination of the actual salary and fringe benefits distributed out of Greg's corporate entities to *296 himself.[5] This was error. The definition of gross income for an individual with a closely held corporation is not expressed in our law in terms of what the individual may choose to transfer over from the corporation's accounts to himself personally. This is because, after a profit and loss analysis, taking into account the ordinary and necessary expenses of the business, the actual profit of the business remains in the control of the owner/proprietor and is his income for the support obligation under the statute irrespective of a corporate transfer to himself.
The record indicates that each corporation's income or loss was listed on the Scotts' personal federal tax return as follows:

 2003 2004 2005
 --------- -------- ---------
 PCSS $322,618 $412,607 $346,397
 PU $ (7,525) $ 34,803 $(73,790)

The separate tax returns for PCSS and PU from which the above Schedule K-1 data was derived were not introduced in evidence. Nevertheless, from PU's profit and loss accounting statement for the corporate tax year ending June 2005, the $73,790 corporate loss for the company which is listed on Greg's 2005 tax return is completely detailed. That loss was the result of income of $755,667.70 and corporate expenses of $829,457.14. In the language of the statutory definition for gross income, the profit and loss statement represents the difference between the company's "gross receipts" and the "ordinary and necessary expenses required to produce income." Indeed, there is no real dispute from the parties' accounting experts that the Schedule K-1 information appearing on the tax returns represents the net income (or loss) of the two corporations before payment of taxes.
In our opinion, this K-1 information is the best evidence of what Greg earned and had at his disposal from his businesses, and indeed that information was reported as his personal net business income for federal taxes. His income for support of his children may not be minimized by the small corporate withdrawals he elects.
Likewise, we are not persuaded by Greg's accounting arguments in brief concerning the need for retained capital in the businesses, the cash flow of the businesses and payment of taxes. These service-related businesses are not capital intense operations judging from the relatively small amount of asset depreciation expense listed on the profit and loss statements of PCSS and PU. In any event, gross income for the solely owned proprietorship is statutorily defined without consideration of the probable need of a parent's business to retain some of the income for acquisition of business assets or other reasons. In the same manner, the gross salary or wages of an employed parent is the amount utilized under the guidelines to determine the basic child support obligation without consideration of a parent's major expenditure in a given year for an automobile or personal business tools which are necessary to realize the salary or wages. Likewise, the jurisprudence recognizes that the calculus of the guidelines employs the sum of the before-tax salaries or wages ("gross income") of the parents in the determination of the basic support obligation. Naquin v. Naquin, 610 So.2d 981 (La.App. 1st Cir.1992); Bullock v. *297 Bullock, 98-263 (La.App. 4th Cir.8/19/98), 719 So.2d 113. The same applies for income earned through a parent's solely owned corporation, since the definition under La. R.S. 9:315(C)(3)(c) does not exclude taxes from the company's gross receipts. Thus, Greg cannot argue that the amount of the taxes which he personally paid quarterly with reimbursement from the funds of his corporation is not included in the guidelines' measure of gross income for himself and his business.[6]
Accordingly, with the trial court's error in the application of the statutory definition of the gross income for Greg's closely held corporations, this court may apply the guidelines and render a child support judgment rather than remand to the trial court for further proceedings. Aydelott v. Aydelott, supra. From our review of the business records and Greg's tax returns, we fix Greg's monthly gross income at $25,000. This results in a combined adjusted monthly gross income for Tina and Greg of $28,180.
Louisiana's child support guidelines schedule for support in effect during the pendency of this proceeding[7] is delineated in La. R.S. 9:315.19 and provides only for a maximum combined adjusted monthly gross income of $20,000 per month. For gross income in excess of $20,000, La. R.S. 9:315.13 provides in part:
B. If the combined adjusted gross income of the parties exceeds the highest level specified in the schedule contained in R.S. 315.19, the court shall use its discretion in setting the amount of the basic child support obligation in accordance with the best interest of the child and the circumstances of each parent as provided in Civil Code Article 141, but in no event shall it be less than the highest amount set forth in the schedule.
Under the 2005 Guidelines Schedule, the amount of the basic child support obligation for two children for parents with combined gross incomes of $20,000 was $2,647. Because of the higher combined gross incomes in this case, we fix the amount of the basic child support obligation under La. R.S. 9:315.13(B) at $3,000 of which Greg's support obligation will be $2,661 per month. The judgment of the trial court is therefore amended to reflect this amount.

III.
In her final assignment of error, Tina argues that the trial court erred in failing to tax her expert witness's fee of $3,850 as a court cost pursuant to La. C.C.P. art. 1920 and La. R.S. 13:3666. Greg argues that a hearing to tax such fees has not been requested.
The judgment of the trial court which is the subject of this appeal and which is the last judgment in the record provided as follows:
Expert witness fees of the parties shall be as determined by agreement of the parties and, in the absence of an agreement on same, a special hearing shall be set for the presentation of evidence by both parties.
The jurisdiction of the trial court over all matters in the case reviewable *298 under the appeal is divested, and that of the appellate court attaches, on the granting of the order of appeal in the case of a devolutive appeal. Thereafter, the trial court has jurisdiction in the case over those matters not reviewable under the appeal, including inter alia, the right to set and tax costs and expert witness fees. La. C.C.P. art. 2088; Little v. Pou, 42,782 (La.App. 2d Cir.1/30/08), 975 So.2d 666; writ denied, 08-806 (La.6/6/08), 983 So.2d 920.
In the absence of a judgment fixing the amount and responsibility for expert witness fees, Tina's claim is premature. Her assignment of error is without merit.

Conclusion
For the above reasons, the judgment of the trial court increasing Greg's child support obligation to $971.89 is hereby amended to $2,661. The judgment in all other respects is affirmed. Costs of the appeal are assessed to Gregory Alan Scott.
JUDGMENT AMENDED AND AS AMENDED, AFFIRMED.
NOTES
[1] La. R.S. 13:4611(1)(d) and La. C.C.P. art. 224(2).
[2] Lutke v. Lutke, 33,001 (La.App. 2d Cir.2/1/00), 750 So.2d 512.
[3] La. C.C. art. 141.
[4] La. R.S. 9:375(A).
[5] At one point in the trial court's ruling, the court acknowledged a large $200,000 distribution from PCSS to Greg in 2003 to build a new home. Yet, if that large amount was included for the 2003-2005 period with Greg's salary and other fringe benefits which the court recognized, his average "income" for the years before trial under the court's own analysis would be in excess of $100,000 per year and not $66,000.
[6] From the Scotts' joint returns, the federal taxes for the years 2003-2005, excluding the small portion attributable to Michelle's income, averaged more than the $66,000 per year which the trial court determined for Greg's income.
[7] Louisiana Acts 585, 2008 Regular Session amended and re-enacted La. R.S. 9:315.19 and increased the maximum monthly combined adjusted monthly gross income to $30,000.