WELCH, J.
|2Ernest Deny Milton appeals a judgment partitioning community property. He challenges the trial court’s valuation of a community asset (community dairy cows) and the denial of certain reimbursement claims made by him. We amend the judgment of the trial court with respect to the net value of the community, and, as amended, that portion of the judgment, including the adjudication of the reimbursement claims of the parties, is affirmed. We vacate that portion of the judgment allocating the community assets and liabilities and ordering Derry Milton to pay an equalizing sum in the amount of $15,000.00 to Kelly Milton. For the reasons set forth in this opinion with regard to value of the community dairy cows, we remand for a re-allocation of the community assets and liabilities, and if necessary, for the determination of a new equalizing payment to one of the parties based on the re-allocation.
I. FACTUAL AND PROCEDURAL HISTORY
Derry Milton and Kelly Milton were married on June 27, 1980. During their marriage, they lived in Tangipahoa Parish, where they owned and operated a dairy farm. On July 2, 2008, Kelly Milton filed a petition for divorce, and a judgment of divorce was ultimately granted by the trial court on August 31, 2009.
While the divorce was pending, the parties entered into a stipulated judgment imposing a mutual, reciprocal preliminary injunction prohibiting, enjoining, and restraining both parties from alienating, encumbering, disposing of, or concealing any asset belonging to the community, without written permission of the other party. The parties also stipulated that Derry Milton was authorized to operate the dairy farm and incur, as his separate obligation, various expenses for the dairy farm, including but not limited to [..¡purchasing feed, incurring a feed bill, purchasing replacement cows, incurring debts, repairing and maintaining equipment, and incurring fuel expenses. However, if those expenses inured to the benefit of the community, Derry Milton reserved the right to seek reimbursement for such expenses. Additionally, Derry Milton was authorized to sell the milk, to receive the proceeds of the milk checks to pay expenses of the dairy, and to sell cows, subject to an accounting for any profits when the community property was partitioned. With regard to the sale of cows, Derry Milton was to provide written notice to Kelly Milton, including the number of cows sold, the person (or entity) to whom the cows were sold, and the sales price.
On February 19, 2009, Kelly Milton filed a petition to partition community property. After both parties filed their sworn detailed descriptive lists of all community assets and liabilities, a trial to partition the community was held on January 28, 2010.
At trial, the parties stipulated to the value of the following community assets: community interest in family home (located at 69495 Highway 1054 in Kentwood, Louisiana) with 23.24 acres of land — $223,-333.00;[1] 26.90 acres of land (also located on Highway 1054 in Kentwood, Louisiana) — $135,000.00; household goods and furnishings in family home — $5,000.00; equipment in barn — $9,525.00; and DFA *329 equities and income for dairy from government — $25,117.00.[2] The parties also stipulated to the value of the following community liabilities: Kentwood Co-op (dairy)— $79,539.84; Kentwood Co-op (feed bill)— $16.50; Bank of America (Visa)— $5,668.00; |4and Mildred Day (raising calves — dairy)—$500.00.[3]
The parties also stipulated to the value of the following reimbursement claims of Kelly Milton: ½ of Kelly Milton’s separate funds received from sale of timber from separate property (½ of $9,000.00)— $4,500.00; ½ of ¾ of the rental value for Derry Milton’s use of the family home for 18 months — $5,940.00; ½ proceeds from sale of cows including yearlings and heifers — $23,701.00; ½ of payments made on Bank of America (Visa) debt — $2,100.00; ½ of Kelly Milton’s separate funds received (from sale of timber — $85,486.82) used for community portion (⅜) of home (½ x ⅜ of $56,991.00) — $28,495.00; Kelly Milton’s separate funds (from sale of timber— $85,486.82) used for Derry Milton’s separate portion (⅜) of home (⅛ of $85,486.82)— $28,495.00; ½ of Kelly Milton’s separate funds from sale of separate property used on dairy farm (½ of $32,000.00)— $16,000.00; ½ of Kelly Milton’s separate funds from a succession used for community purposes (½ of $13,734.71) — $6,867.00; ½ of Kelly Milton’s attorney fees through date of divorce (½ of $9,854.50) — $4,927.00; ½ of all college grants received for major children that was not used to pay Bank of America card which was used to pay tuition — $645.00; and ½ of all income from the dairy or property from July 2008 through trial, including milk checks, USDA deposits — $60,213.00.[4]
Lastly, the parties also stipulated to the value of the following reimbursement claims of Derry Milton: ⅛ of Derry Milton’s separate funds from inheritance used for community purposes (⅜ of $13,-500.00) — $6,750.00; ⅜ of payments made on Bank of America (Visa) debt— $2,187.00; ½ of Derry Milton’s attorney fees through date of divorce (½ of $7,800.00) — $3,900.00⅛ ½ of payment of Agri-Max cow loan since July 2008 (½ of $62,509.00) — $31,254.00; ½ payment of Spring Creek Milling (½ of $1,683.02)— $841.51; ½ of miscellaneous dairy expenses — $3,000.00; ⅛ of electric bill for dairy barn (⅛ of $4,944.00) — $2,323.00; já payments ADS (½ of $1,391.00) — $696.00; ½ of ⅜ payment of home repairs in the amount of $994.00; ½ payment to Parish Disposal in the amount of $800.00; ½ of payment to Kentwood Co-op (feed bill) (⅜ of $61,094.33) — $30,547.00; ½ of payment to Kentwood Co-op (miscellaneous bill) (½ of $18,226.00) — $9,112.00.[5]
A trial on the value of the remaining community assets and liabilities and on the reimbursement claims of the parties was then held. At the conclusion of trial, the trial court made the following findings: that the remaining community assets were 163 cows with a value of $177,575.00, an IRA account with a value of $32,903.68, and a John Deere tractor 770 with a value of $7,300.00[6];[7] that there were no other *330 community liabilities (other than those that had already been stipulated to);[8] that Kelly Milton failed to prove and was not entitled to reimbursement claims for the proceeds from the sale of hay and rye grass; that Derry Milton had a reimbursement claim for the use of his separate funds from timber proceeds in the amount of | fi$5,000.00;[9] and that Derry Milton was not entitled to reimbursement or credit for the value of his separate cows that he brought into the marriage, to the fair market rental value of his separate 84-acre dairy land used during the marriage for the benefit of the community, or to dairy farm manager or milk hand wages for managing and working on the dairy farm by himself for the benefit of the community for one and a half years following the termination of the community.
Subject to a reservation of the right to appeal the trial court’s factual findings detailed above, the parties stipulated: that the net community (total community assets less total community liabilities) had a value of $530,029.00,[10] with each party being entitled to ½ of the net community estate or $265,015.00.[11] The parties further stipulated that if Kelly Milton assumed the Bank of America (Visa) liability in the amount of $5,668.00, she would be entitled to receive a total asset of $270,683.00. Additionally, and subject to the right to challenge the trial court’s findings with regard to reimbursement claims, the parties agreed that Deny Milton owed reimbursement to Kelly Milton in the total amount of $181,883.00,[12] that Kelly Milton owed reimbursement to Deny Milton in the total amount of $97,405.00,[13] with the net offset being that Deny Milton owes Kelly Milton | ./reimbursement in the amount of $84,478.00.[14] Combining the amounts that Kelly Milton was entitled to receive— $270,683.00 — plus her reimbursement in the amount of $84,478.00 — the parties stipulated that Kelly Milton was entitled to the total amount of $355,161.00. In order to receive this amount, the parties stipulated that Kelly Milton would be allocated the family home (both the ⅜ community interest and Deny Milton’s separate Jé interest) (for a total value of $335,000.00) and the household goods and furnishings (with a value of $5,000.00), and that she would receive an equalizing payment in the amount $15,000.00 — giving her a total of $355,000.00 in assets.
The parties further stipulated that Der-ry Milton would receive the 26.90 acres of land, all assets associated with the dairy farm, including cows, the tractors, DFA equities, and barn equipment. Additional *331 ly, Derry Milton assumed the liabilities associated with the dairy farm, including but not limited to the Kentwood Co-op and Mildred Day’s bill.
A written judgment reflecting the trial court’s ruling and the parties’ stipulations was signed on March 3, 2010, and it is from this judgment that Derry Milton has suspensively appealed. On appeal, Derry Milton raises nine assignments of error that present five main issues for our review: (1) the scope of the examination (or cross examination) of Kelly Milton allowed by the trial court; (2) Derry Milton’s claim for the value of the separate cows that he brought into the marriage; (3) Derry Milton’s claim for rental value for the use of his separate land by the community dairy business; (4) Derry Milton’s claim for wages — as a dairy farm manager and/or a milk hand — for managing and working on the community dairy farm by himself for one and a half years following the termination of the community; and (5) the number and value placed on the community dairy cows.
| all. LAW AND DISCUSSION

A. Cross-examination of Kelly Milton

In this assignment of error, Der-ry Milton essentially contends that the trial court legally erred in refusing to allow the cross-examination of Kelly Milton on issues other than those brought out in direct examination. He contends that although the parties submitted a joint list or exhibit of all stipulated and contested community assets and liabilities and all claims between the parties, the trial court precluded him from questioning Kelly Milton, on cross-examination, regarding many of the items or claims contained in the list— specifically those pertaining to Derry Milton’s reimbursement claims — on the basis that those issues were not addressed during her direct examination. Derry Milton claims that he should have been allowed to examine or cross-examine Kelly Milton as to any item contained on the joint list.
Louisiana Code of Evidence article 611 provides, in pertinent part:
A. Control by court. Except as provided by this Article and Code of Criminal Procedure Article 773, the parties to a proceeding have the primary responsibility of presenting the evidence and examining the witnesses. The court, however, shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to:
(1) Make the interrogation and presentation effective for the ascertainment of the truth;
(2) Avoid needless consumption of time; and
(3) Protect witnesses from harassment or undue embarrassment.
B. Scope of cross-examination. A witness may be cross-examined on any matter relevant to any issue in the case, including credibility. However, in a civil case, when a party or person identified with a party has been called as a witness by an adverse party to testify only as to particular aspects of the case, the court shall limit the scope of cross-examination to matters testified to on direct examination, unless the interests of justice otherwise require.
|9C. Leading questions. Generally, leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony and in examining an expert witness on his opinions and inferences. However, when a party calls a hostile witness, a witness who is unable or unwilling to respond to proper questioning, an adverse party, or a witness identified with an adverse party, interrogation *332 may be by leading questions. Generally, leading questions should be permitted on cross-examination. However, the court ordinarily shall prohibit counsel for a party from using leading questions when that party or a person identified with him is examined by his counsel, even when the party or a person identified with him has been called as a witness by another party and tendered for cross-examination.
After reviewing the transcript of the trial of this matter, we note that Kelly Milton only testified during the presentation of her own case and that the trial court limited Derry Milton’s cross-examination of Kelly Milton only to issues addressed during her direct examination. Louisiana Code of Evidence article 611(B) provides that a witness may be cross-examined on any matter relevant to any issue in the case.[15] In this case, the parties submitted a joint exhibit of the stipulated and contested community assets and liabilities and claims between the parties. Therefore, Derry Milton was entitled to cross-examine Kelly Milton regarding any of the items or claims contained in the joint exhibit. Accordingly, we find that the trial court erred in limiting the scope of the cross-examination of Kelly Milton by Derry Milton. However, following the trial court’s improper ruling limiting the scope of the cross-examination, Derry Milton did not make an offer of proof or a proffer of the evidence. See La. C.E. art. 103. Furthermore, we find that the error was harmless, as the record before us does not establish that a substantial right of Derry Milton’s was affected. See La. C.E. art. 103.
Accordingly, we find that the trial court did not commit a reversible |inerror in refusing to allow Derry Milton to cross-examine Kelly Milton on matters that were not brought out in her direct examination. This assignment of error has no merit.

B. Reimbursement Claims of Derry Milton

1. Value of Derry Milton’s Separate Cows

In this assignment of error, Derry Milton contends that his undisputed testimony at trial established that, at the time of his marriage to Kelly Milton, he had been a dairy farmer for four years and brought 60 cattle into the marriage, which were worth $1,500.00 apiece (for a total of $90,000.00), and that those cattle immediately began producing income for the benefit of the community. Based on this evidence and the provisions of La. C.C. art. 2367, he contends that he was entitled to reimbursement for one-half the value the cattle had at the time they were used and that the trial court erred in refusing to grant him such reimbursement.
Louisiana Civil Code article 2367 provides:
If separate property of a spouse has been used during the existence of the community property regime for the acquisition, use, improvement, or benefit of community property, that spouse is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used. The liability of the spouse who owes reimbursement is limited to the value of his share of all community property after deduction of all community obligations.
Thus, Derry Milton contends that because his separate property (the 60 cows) was used during the existence of the community property regime for the acquisi *333 tion, use, improvement, or benefit of the community in the form of income to the community, he is entitled to reimbursement for one-half the value the cattle had at the time they were used or $45,000.00. We disagree.
It was uncontradicted that Derry Milton brought 60 dairy cows into the marriage, which were his separate property. However, those cows produced | nmilk — a natural fruit of the animal — and that milk produced revenue — a civil fruit. See La. C.C. art. 551. Thus, the milk and the revenue from the milk were natural and civil fruits of the separate property of Derry Milton. Louisiana Civil Code article 2339 provides that “[t]he natural and civil fruits of the separate property of a spouse ... are community property.”[16] Thus, the 60 cows brought into the marriage by Derry Milton produced natural and civil fruits, which were community property. The cows were not used during the community for the “acquisition, use, improvement or benefit of community property,” as contemplated in La. C.C. art. 2367; rather, the cows simply produced community property. Accordingly, Derry Milton was not entitled to reimbursement under La. C.C. art. 2367 for one-half the value of the cows that he brought into the marriage, and we find no error in the trial court’s decision to reject the request for reimbursement in this regard. This assignment of error has no merit.

2. Rental Value for the Use of Derry Milton’s Separate Property

In this assignment of error, Derry Milton contends that his testimony at trial established that his separate inherited land, including the dairy barn, was used during the existence of the community and following the termination of the community for the benefit of the community dairy farm. Additionally, he contends that the testimony of Joseph Mier, an appraiser, which was erroneously excluded from evidence by the trial court, established the rental value of Derry Milton’s property at the time it was used was $127,800.00 ($900.00 per month for the thirty six months prior to trial, plus approximately $300.00 per month from the date of marriage through January 2007). Based on this evidence and, again relying on the provisions of La. C.C. art. 2367, he 1 ^contends that he was entitled to reimbursement for one-half the value the land had at the time it was used ($63,900.00) and that the trial court erred in refusing to grant him such reimbursement. We disagree.
The provisions of La. C.C. art. 2367 provide for reimbursement to a spouse when the amount or value of a spouse’s separate property is used during the community to acquire, improve, or benefit community property. For example, when the separate funds of a spouse are used during the community to acquire a community home, then the spouse whose separate funds were used is entitled to reimbursement for one-half the value of those funds at the time the funds were used. In this case, although there was no dispute that Deny Milton’s separate property — ie., the land itself — was used, in part, during the existence of the community by the community dairy farm, there was no evidence establishing that the value of the land was used during the existence of the community to acquire, improve, or benefit community property, as required by La. C.C. art. *334 2367. Accordingly, Derry Milton was not entitled to reimbursement under La. C.C. art. 2867 for one-half the rental value of his separate land for its use by the community dairy farm, and we find no error in the trial court’s decision to reject the request for reimbursement in this regard. This assignment of error has no merit.

3. Perry Milton’s Claim for Wages

In this assignment of error, Deny Milton challenges the trial court’s refusal to grant his claim for wages — as a dairy farm manager and/or a milk hand — for managing and working on the community dairy farm by himself for one and a half years following the termination of the community. According to Derry Milton’s testimony, following the termination of the community, he worked on the dairy farm approximately eight hours a day, seven days a week. His work on the farm included milking the cows twice a | isday (at 3:00 a.m. and after he got home from his job as a postal worker), caring for the cows, performing general repair work on equipment and tractors, and working, plowing, planting, and bush hogging the fields. Derry Milton contends that this labor on his part following the termination of the community was his separate labor on behalf of a community enterprise for which he was entitled to be reimbursed. Specifically, Derry Milton claimed that he was entitled to be reimbursed for the wages of a dairy farm manager or a milk hand, as provided in U.S. Department of Labor Statistics, and that the trial court erred in refusing compensate him for such wages.
Louisiana Civil Code article 2369.1 provides, in pertinent part that “[ajfter the termination of the community property regime, the provisions governing co-ownership apply to former community property, unless otherwise provided by law or juridical act,” “A spouse has a duty to preserve and to manage prudently former community property under his control, including a former community enterprise, in a manner consistent with the mode of use of that property immediately prior to termination of the community regime. He is answerable for any damage caused by his fault, default, or neglect. A community enterprise is a business that is not a legal entity.” La. C.C. art. 2369.3. “A spouse who incurs expenses in compliance with the obligation imposed by [La. C.C. art. 2363.9] is entitled to reimbursement for one-half the costs in accordance with the general principles of the law of co-ownership.” La. C.C. art. 2369.3, comment (f).
“A co-owner who on account of the thing held in indivisión has incurred necessary expenses, expenses for ordinary maintenance and repairs, or necessary management expenses paid to a third person, is entitled to reimbursement from the other co-owners in proportion to their shares.” La. C.C. art. 806. “Under this provision, a co-owner is responsible to his cojowners14 for his share of necessary management expenses paid to a third person. A co-owner is not allowed to receive anything for his own management of the thing that is held in indivisión unless he is entitled to such a recovery under a management plan adopted by agreement of all the co-owners, by judgment, or under the law of unjust enrichment.” La. C.C. art. 806, comment (0.
Louisiana Civil Code article 2369.2 provides that “[e]ach spouse owns an undivided one-half interest in former community property and its fruits and products.” A spouse’s right to recover costs of producing fruits and products is governed by La. C.C. art. 798, and is assertable in an action of partition under La. R.S. 9:2801. La. C.C. art. 2369.2, comment (d). Louisiana Civil Code article 798 provides that “[c]o- *335 owners share the fruits and products of the thing held in indivisión in proportion to their ownership. When fruits or products are produced by a co-owner, other co-owners are entitled to their shares of the fruits or products after deduction of the costs of production.” However, a “co-owner does not have the right to claim compensation for his own labor or services;” he may, nevertheless, “be entitled to such compensation under the law of unjust enrichment.” La. C.C. art. 798, comment (c).
According to the September 24, 2008 stipulated judgment, Derry Milton was authorized to operate the community dairy farm; thus, he had a duty to preserve and manage the dairy farm in a manner consistent with they way he had done immediately prior to the termination of the community. Additionally, Derry Milton was entitled to reimbursement for necessary expenses, expenses for ordinary maintenance and repairs, or necessary management expenses paid to a third person. The stipulations of the parties and the evidence at trial indicated that Derry Milton had fulfilled his duty in 11sthis regard and that he was reimbursed for expenses that the law provided he was entitled to be reimbursed for. However, the applicable provisions of the law, do not provide for Derry Milton to be compensated for his own management of the community dairy farm.[17]
Furthermore, the community dairy farm produced milk from community cows, which generated revenues for the farm. At the time of the termination of the community, the cows on the dairy farm were community property. Thus, Deny Milton and Kelly Milton each owned an undivided one-half interest in the cows and in the natural and civil fruits of those cows — i.e., the milk and the revenues derived therefrom. Although Kelly Milton was only entitled to her share of the fruits of the community dairy farm after the costs of production, the applicable provisions of law do not provide for Deny Milton to be compensated for his own labor or services in the production of co-owned fruits, ie., in the production of milk for the dairy farm.[18]
Accordingly, Deny Milton was not entitled to reimbursement for wages for managing or working on the community dairy farm by himself for one and a half years following the termination of the community, and we find no error in the trial court’s decision to reject the request for reimbursement in this regard. This assignment of error has no merit.

C. Number and Value Placed on Community Cows

|1fiIn this assignment of error, Derry Milton contends that the trial court’s factual finding that the community owned 168 cows, which were valued at $177,575.00 (or $1,089.41 each) was manifestly erroneous.[19] We agree.
*336 The provisions of La. R.S. 9:2801 set forth the procedure by which community property is to be partitioned when the spouses are unable to agree on a partition of community property. La. R.S. 9:2081(A); Bible v. Bible, 2003-2793, p. 4 (La.App. 1st Cir.9/17/04), 895 So.2d 547, 549-550, writ denied, 2005-1081 (La.6/17/05), 904 So.2d 700. Under La. R.S. 9:2801(A)(4)(a), “[t]he court shall value the assets as of the time of trial on the merits.” The provisions of La. R.S. 9:2801 are mandatory. Bible, 2003-2793 at p. 4, 895 So.2d at 550.
In this case, the trial court’s factual finding that the community owned 163 cows was based on the testimony of Kelly Milton and a January 2008 financial statement to Agri-Max Financial Services, L.P. (“Agri-Max”). Kelly Milton testified that during the existence of the community, she and Derry Milton generally owned approximately 163 cows at a time and believed that they owned 163 cows when she filed her petition for divorce on July 2, 2008. However, her testimony in this regard was based on the January 2008 financial statement to Agri-Max. Kelly Milton further testified that, although h7they sold cows each year, the herd should have remained the same because the cows were reproducing calves, and the calves generally replaced what was sold. Kelly Milton testified as of the time of trial, Derry Milton had sold approximately 90-95 cows since July 2, 2008 (the date the community terminated), and that he had accounted to her for all cows sold. Kelly Milton had no knowledge as to the number of cows owned on the date of trial, other than her belief that there were 163 because that was the number that they generally had.
Derry Milton testified that as of the date of trial, the community had 43 cows. He testified from the time of the January 2008 financial statement to Agri-Max through July 2, 2008 (the date the community terminated), he sold 22 cows and approximately 6 or 7 cows died. He stated that none of the cows that he sold had calves before he sold them, as the calves were generally born in the fall. Thus, Derry Milton testified that as of the date the community terminated, the community only owned 141 dairy cows.
Derry Milton further testified that following the termination of the community, in the summer and fall of 2008, he was having fertility problems with the cows, in that they had contracted “Lepto ” and “Vi-brio.” He stated that although the cows would get pregnant, they would eventually miscarry the calves or have a stillbirth. He stated that approximately 60% of his remaining herd had miscarried. As a result, they were not having the number of calves that they should have had, the cows were milking longer and getting less production. In an attempt to rectify this problem, Deny Milton testified that he changed vaccines upon the recommenda *337 tion of his veterinarian and he sold his bull because “Vibrio” could be spread by a bull.
Derry Milton testified that because of the miscarriages and stillbirths experienced in the summer and fall of 2008, he did not have a doubling of the | ,8herd. Additionally, due to problems in the dairy industry and the falling prices of milk (which necessitated government subsidies), he decided that he would start selling the cows and pay off the community debts of the farm. Deny Milton testified that he accounted to Kelly Milton for all of the cows that were sold, and that as of the time of trial, there were 43 cows remaining.
In this case, the only evidence as to the number of cows on the date of the community property partition trial was the testimony of Derry Milton that there were 43 cows. The trial court’s determination that there were 163 cows was based on Kelly Milton’s testimony and the January 2008 financial statement to Agri-Max, which was approximately six months prior to the termination of the community. Louisiana Revised Statutes 9:2801 mandates that assets are valued as of the time of the partition trial — not at the time the community is terminated or some time prior to its termination. The only testimony as to the number of cows owned by the community on the date of trial was the testimony of Derry Milton — i.e., that there were 43 cows, that the other cows had been sold, and that Kelly Milton was entitled to one-half the proceeds of all cows sold. Thus, there was no reasonable basis for the trial courts determination that as of the date of trial, the community had 163 dairy cows worth $177,575.00, and its finding in this regard was manifestly erroneous.
To the extent Kelly Milton claimed that the number of cows owned by the community should have remained the same or that the decrease in the herd was attributable in some way to Derry Milton, such allegations would pertain to a claim under the provisions of La. C.C. art. 2369.3.[20] However, Kelly | |9Milton did not make a claim under La. C.C. art. 2369.3. In fact, Kelly Milton specifically admitted that the dairy industry had been suffering and that the prudent thing a manager of a dairy would do would be to get out of the business before getting into debt.
As we have concluded that the trial court’s factual finding as to the number and value of community cows was manifestly erroneous, we find that the community had 43 cows on the date of the partition trial, and using the value placed on each cow by the trial court — $1,089.41 (which was not challenged on appeal), the value of those cows as of the date of trial was $46,844.63.[21] Accordingly, the net community estate of the parties is valued at $399,298.97,[22] and the judgment of the trial court is amended as follows: The first paragraph of Part T is amended to reflect that each party is entitled to $199,649.48 in *338 net assets;[23] the third paragraph of Part I is amended to provide that Derry Milton owes Kelly Milton $284,127.48.
However, with regard to Part II of the judgment, we find that the trial court’s erroneous factual finding as to the number and value of community cows affected the parties stipulation as to a proper and equitable allocation of assets and liabilities and that the financial circumstances of the parties may no longer warrant such allocation. For instance, based on the values as amended and the allocation of assets set forth in the judgment, it appears that Kelly Milton would owe a significant equalizing payment to Derry Milton, when perhaps, the parties would rather agree to a different allocation of assets. 12nTherefore, we vacate Part II of the judgment, which allocates the community assets and liabilities and renders judgment for an equalizing sum in favor of Kelly Milton, and we remand for a re-allocation of assets and liabilities and if necessary, an equalizing payment in accordance with La. R.S. 9:2801(A)(4)(c).
III. CONCLUSION
In sum, we find no error in the trial court’s refusal to grant Derry Milton’s reimbursement claims for the value of his separate cows brought into the marriage, rental value for the community dairy farm’s use of his separate property during the marriage, and for wages for managing and working on the community dairy farm following the termination of the community. However, we find that the trial court manifestly erred in concluding on the date of the partition trial, that the community owned 163 cows worth $177,575.00. Instead, we conclude that the community owned 43 cows, worth $46,844.63. Accordingly, we amend Part I of the trial court’s judgment with respect to the net value of the community, and the amount that each party is entitled to receive. As amended that portion of the judgment Part I of the judgment of the trial court is affirmed. We vacate Part II of the judgment, which allocates the community assets and liabilities, and remand for a re-allocation of assets and liabilities in accordance with the views expressed in this opinion.
All costs of this appeal are assessed equally between the parties, Kelly Ann Milton and Ernest Derry Milton.
JUDGMENT AMENDED, AND AS AMENDED AFFIRMED IN PART; VACATED IN PART; REMANDED WITH INSTRUCTIONS.
CARTER, C.J., concurs.

. The parties stipulated that this property was valued at $335,000.00; however the community only had a ¾ interest in the property and the remaining ½ interest was Derry Milton’s separate property.

. The value of the stipulated community assets was $397,975.00.

. The value of the stipulated community liabilities was $85,724.34.

. Kelly Milton’s total stipulated reimbursement claim was $181,883.00.

. Derry Milton’s total stipulated reimbursement claim was $92,404.51.

.The transcript indicates that the trial court found the tractor had a value of "seventy three thousand three hundred dollars.” However, this appears to have been an inadvertent misstatement by the trial court, as the value placed on this asset by Kelly Milton was only $7,300.00, and Derry Milton claimed it was his separate property. Furthermore, in stipulating to the net value of the community following trial, the parties had to have utilized *330 the sum of $7,300.00 (rather than the sum of $73,300.00) in order to reach the value that they did. See footnote 10.

. The adjudicated community assets totaled $217,778.68.

. The adjudicated community liabilities totaled $0.00.

. Derry Milton’s total adjudicated reimbursement claim was $5,000.00.

. The total community assets of $615,753.68 (stipulated community assets of $397,975.00 + adjudicated community assets of $217,778.68) less the total community liabilities of $85,724.34 (stipulated community liabilities of $85,724.34 + adjudicated community liabilities of $0.00), yields a net community of $530,029.34.

. ½ of $530,029.00 is $265,015.00.

. Kelly Milton’s total stipulated reimbursement claim of $181,883.00 + Kelly Milton’s total adjudicated reimbursement claim of $0.00 = $181,883.00.

. Derry Milton’s total stipulated reimbursement claim of $92,404.51 + Derry Milton’s total adjudicated reimbursement claim of $5,000.00 = $97,404.51.

. $181,883.00 - $97,405.00 = $84,478.00.

. The limited scope of the cross-examination referred to in La. C.E. art. 611(B) is the cross-examination by the testifying party’s own attorney, not the attorney for the adverse party.

. We note that pursuant to La. C.C. art. 2339, a spouse may reserve the natural and civil fruits of his separate property as his separate property by declaration made in an authentic act or act under private signature duly acknowledged. There was no evidence offered in this case establishing that Derry Milton had made such a declaration.

. Although a co-owner may be entitled to compensation for his own management expenses under a management plan adopted by agreement of all the co-owners, by judgment, or under the law of unjust enrichment, we do not find, based on the record before us, that any of these exceptions are applicable.

. Again, we note that a co-owner may be entitled to compensation for his own labor or services in the production of co-owned fruits based on the law of unjust enrichment; we do not find, based on the record before us, that application of the principles of unjust enrichment is warranted herein. See La. C.C. art. 2298. See generally, Webb v. Webb, 2001-1577 (La.App. 1st Cir. 11/8/02), 835 So.2d 713, writ denied, 2002-3001 (La.3/14/03), 839 So.2d 37.

.A trial court’s factual findings and credibility determinations made in the course of valuing and allocating assets and liabilities in the partition of community property may not be set aside absent manifest error. McDaniel v. McDaniel, 35,833, p. 6 (La.App. 2nd *336 Cir.4/3/02), 813 So.2d 1232, 1235. The two-part test for the appellate review of facts in order to affirm the factual findings of the trier of fact is: (1) the appellate court must find from the record that there is a reasonable factual basis for the finding of the trier of fact; and (2) the appellate court must further determine that the record establishes that the finding is not clearly wrong (manifestly erroneous). See Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Thus, if there is no reasonable factual basis in the record for the trier of fact’s finding, no additional inquiry is necessary to conclude there was manifest error. However, if a reasonable factual basis exists, an appellate court may set aside a factual finding only if, after reviewing the record in its entirety, it determines the factual finding was clearly wrong. See Stobart v. State, DOTD, 617 So.2d 880, 882 (La.1993); Moss v. State, 2007-1686, p. 3 (La.App. 1st Cir.8/8/08), 993 So.2d 687, 693, writ denied, 2008-2166 (La. 11/14/08), 996 So.2d 1092.

.Louisiana Civil Code article 2369.3 provides that a "spouse has a duty to preserve and to manage prudently former community property under his control, including a former community enterprise, in a manner consistent with the mode of use of that property immediately prior to termination of the community regime. He is answerable for any damage caused by his fault, default, or neglect. A community enterprise is a business that is not a legal entity.”

. Thus, the adjudicated community assets now total — $87,048.31.

. The total community assets of $485,023.31 (stipulated community assets of $397,975.00 + the adjudicated assets changing the value of the cows as determined herein of $87,048.31) less the total community liabilities of $85,724.34 yields a net community of $399,298.97. See footnote 10.

. $199,649.48 is ½ of $399,298.97.